Orville I. Woolsey, Appellant, v. Axton & Son.

*Sale—Contract—Delivery.*

Where one person agrees to sell and deliver to another a raft, and the vendee agrees to pay a certain amount at the time of the agreement, and, at a specified future date one half of the balance in cash, and the remainder by note, the vendee has no right to demand credit of an old debt in the settlement, and is not entitled to possession of the raft until he pays for it in the manner stipulated in the contract.

M. agreed to deliver to W. at G. a raft of timber of a certain size, W. agreeing to pay $100 down, balance of half the amount at a certain time, and to then give a ninety-day note for the other half. The $100 was paid, and afterwards $50.00 more. The raft, price of which amounted to $640, was afterwards moored at G., and, on objection of W. to certain of the timbers, they were replaced with others, whereupon he announced himself satisfied. Then they met for settlement, and W. claimed $500 to be due on another matter, and demanded it should be credited on the purchase money; but M. disputed the claim, refused to make such credit, and demanded cash and note as per contract, which was refused. W. then took possession, and M. retook and retained possession. *Held*, that there was no delivery, but that the title remained in M.

Argued May 9, 1899. Appeal, No. 128, Jan. T., 1899, by plaintiff, from judgment of C. P. Fayette Co., Dec. T., 1898, No. 54, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Assumpsit to recover the purchase price of a raft. Before MESTREZAT, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[We are of opinion that, under the contract submitted here and under which the plaintiff, Woolsey, claims to recover and claims title to this raft, it was his duty to pay, or to secure the payment of, the balance of the purchase money according to the contract, before he could legally recover or compel Minor to deliver him the raft. It is not disputed, as we have already said, that he didn't pay the balance of the one half on the first of April, 1897, of the purchase money due on this raft or give a note for the remainder for ninety days as required by this

contract.   It is our opinion that, not having done that, he is
not in a position, and was not in a position, to require the deliv-
ery of that raft to him.   As we understand the evidence—and
it is not disputed—there was no delivery of this raft to Wool-
sey.   It is claimed, however, on the part of Mr. Woolsey that
under this agreement when these sticks of timber were taken
by Minor to the Monongahela river and placed in the river and
put together or rafted, as it is called here, that it immediately
became the property of Woolsey and was a delivery under this
contract.   That is not our construction of this contract; on
the contrary, we are of opinion that, in addition to placing the
sticks of timber in the river and rafting them, putting them to-
gether, that there was yet to be a delivery by Minor to Woolsey.
It is not denied that Minor placed his ropes upon this raft and
moored it there at the mouth of Georges creek; and it is not
denied, further, that Woolsey didn't take possession of this raft
until that Sunday when he did it in the absence of Minor and
without his permission.   That was not a delivery by Minor to
Woolsey.]   [3]

The court refused plaintiff's second point recited in the opin-
ion of the Supreme Court [2], refused binding instructions for
plaintiff [1] and gave binding instructions for the defend-
ant.   [4]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Edward Campbell*, for appellant.—The title to the raft was
in the plaintiff: 1 Parsons on Contracts (7th ed.), p. 562; Den-
nis v. Alexander, 3 Pa. 50; Ropes v. Lane, 11 Allen, 591; Shaw
v. Nudd, 8 Pick. 9; Higgins v. Chessman, 9 Pick. 7; Ballen-
tine v. Robinson, 46 Pa. 177; Com. v. Fleming, 130 Pa. 138.

*George D. Howell*, for appellees.—Where goods are manu-
factured under a contract, even though the title passes to the
vendee upon completion, the lien of the vendor for the purchase
money remains until he parts with the possession, or does some
act inconsistent with the purpose to retain a lien: Nat. State
Bank v. Korting Gas Eng. Co., 3 Pa. Dist. Rep. 604; Lester v.
McDowell, 18 Pa. 91.

We contend that Minor never by word or deed, showed an intent to part with possession of the raft until paid: Bush v. Bender, 113 Pa. 94; McCullough v. McCullough, 14 Pa. 295.

OPINION BY MR. JUSTICE DEAN, July 19, 1899:

On February 20, 1897, Woolsey, this appellant, made an agreement in writing with Josephus Minor, as follows:

"1897–2–20, NEW GENEVA,
"FAYETTE CO., PA.

"I, Jos. Minor of the first part agree to deliver at New Geneva, Pa.

"One raft averaging 120 cu. ft. to stick if weather is reasonable.

"One raft averaging 100 cu. ft. to stick and the tie poles for the first raft.

"I, Orville Woolsey of the second part agree to pay him one hundred dollars now on first raft; balance of half the amount on April 1st, 1897; and note for balance, for ninety days.

"Second raft: half down, and ninety day note; timber to be in against May 10th, 1897.

"Witness:                                ORVILLE WOOLSEY.
"Witness:                                JOE MINOR.
        "TODD DREW.

"Endorsed: First raft settled for 6420 cu. ft. at 10 cts. $642. Settled April 10, 97."

It will be noticed, two rafts were contracted for to be delivered at Geneva. The second one mentioned was delivered and paid for; there is no dispute as to that one. The first one which was to average 120 cubic feet per stick is the one in dispute. The price per foot is not specified in the written agreement, but that it was ten cents per cubic foot is not disputed. One hundred dollars of the purchase money for this one, it will be noticed, was to be paid on signing the agreement; half the balance on April 1, 1897, and note for remaining half at ninety days to be then given. The $100 was paid on signing agreement, and afterwards an additional $50.00. About August 10, 1897, the raft was moored at Geneva by Minor, and Woolsey notified, who examined it, and finding fault with several of the sticks, Minor replaced them by others, and Woolsey announced him-

self satisfied; then, notified Minor to come to his house and they would make a settlement on the contract. They accordingly met at Woolsey's house for that purpose. Woolsey claimed there was due him from Minor an old debt of $500, which should be credited on the purchase money. Minor denied the justice of this claim alleging he had paid it, and demanded the half cash and ninety days' note as stipulated in the contract, which Woolsey refused, and they separated without a settlement. Woolsey, then, in the absence of Minor, took actual possession of the raft early on Sunday morning; Minor, by force retook and retained possession; then followed criminal prosecutions and an action for trespass. On October 1, 1897, Minor sold and delivered the raft to Axton & Son, these appellees, who manufactured and sold the timber for their own account; Woolsey brought this suit in assumpsit against them for its value. At the trial in the court below, the learned judge being of opinion, there had been no delivery of the raft by Minor to Woolsey, instructed the jury to find for defendant, and we have this appeal by plaintiff. The error complained of is the refusal of the court to affirm plaintiff's second point, thus :

" The plaintiff asks the court to charge the jury that if Josephus Minor supplied the place of the small timber in the raft to which the plaintiff objected as too small under the contract, with larger lumber according to Josephus Minor's testimony, and if after the said three sticks of lumber were supplied by the said Minor, nothing more remained to be done to the raft to fit it for delivery according to the contract, and if the said raft was so prepared by Minor at New Geneva according to the contract; and if the plaintiff paid the said Minor $150 on the said raft, before the said raft was removed from New Geneva aforesaid; then the title to the said raft was vested in the plaintiff before the said raft left New Geneva, and the verdict should be for the plaintiff for the value thereof. *Answer:* Refused."

The conclusion of the learned counsel for appellant does not follow from the facts set out in the point. Woolsey, without Minor's assent, could have no lawful possession of the raft until he complied with the terms of his agreement, which expressly stipulated for payment of half the balance in cash and a ninety days' note for the remaining half. Admit that, on inspection, Woolsey objected to the quality of some of the sticks,

and Minor replaced them, then Woolsey signified his accept-
ance of the raft, that only proves that Minor had complied fully
with his part of the contract, and the delivery of the raft would
be complete on Woolsey performing his part, the payment of
the cash and delivery of the note; but until this was done, or
Minor waived performance; both title and possession remained
in him. The payment, by a plain implication from the contract,
was a condition precedent to actual delivery to Woolsey; not
alleged payment by an old and disputed indebtedness, which
formed no part of the contract, but actual payment by cash and
note. If Woolsey intended by that means to collect the old
indebtedness, he should not have expressly stipulated for an-
other method of payment for the timber. We have no quarrel
with the many authorities cited by the able counsel for appel-
lant. They, undoubtedly, hold that a contract for the sale of a
chattel may be fully executed while the actual possession re-
mains in the vendor; but in all such cases the intention of the
contracting parties, that a constructive delivery shall immedi-
ately take place, is either expressed or implied. The implica-
tion from this contract and the circumstances is directly the
reverse. Even Woolsey's interpretation, by his admitted con-
duct, was that he owed to Minor immediate settlement and
payment of balance due, to complete the delivery. Bush v.
Bender, 113 Pa. 94, is very much like the case before us on its
facts. Bender, a farmer, sold to Bush a lot of horses to be de-
livered at a tavern, there to be paid for in cash. He took them
to the tavern, and Bush offered to pay with some old notes
drawn by Bender years before and apparently still unpaid, in-
stead of with cash. Bender refused to accept such payment,
and when he attempted to retake possession of his horses, Bush
refused to give them up; Bender replevied them, this Court
holding there was no delivery within the contemplation of the
parties to the contract; that Bush was not entitled to posses-
sion until he paid the cash, and that his attempt to extort pay-
ment of an old debt by such methods was a fraud upon Bender.
To the same effect are Lester v. McDowell, 18 Pa. 91, and Mc-
Cullough v. McCullough, 14 Pa. 295.

We are of opinion that the court below committed no error
in holding there was no delivery of the raft to Woolsey under
the contract. The assignments of error are overruled, and the
judgment is affirmed.