# Brown v. Reber, Appellant.

*Contract—Sale—Delivery of possession—Passing of title—Auction—Securing of purchase money—Horse.*

Where a horse is sold at auction upon the condition that the purchase money shall be paid in cash, or by a note with sufficient security, and the seller retains possession of the horse pending the production of the note with security, and the horse dies in the meantime, the seller and not the purchaser must sustain the loss. Until the note is produced the title does not pass.

Argued Nov. 15, 1905. Appeal, No. 188, Oct. T., 1905, by defendant, from judgment of C. P. Berks Co., Sept. T., 1903, No. 52, on verdict for plaintiff in case of Frank M. Brown v. D. L. Reber. Before RICE, P. J., BEAVER, ORLADY, POR-TER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for the purchase price of a horse. Before ERMENTROUT, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* are all quoted in full in the opinion of the Superior Court.

*Adam B. Reiser,* of *Reiser & Schaffer,* for appellant, cited: Hutchinson v. Hunter, 7 Pa. 140; Segrist v. Crabtree, 131 U. S. 287 (9 Sup. Ct. Rep. 687); Wallingford v. Burr, 18 N. W. Repr. 67; Levasseur v. Cary, 3 Atl. Repr. 461; State v. O'Neil, 58 Vt. 140 (2 Atl. Repr. 586); Mason v. Thompson, 35 Mass. 305; Fuller v. Bean, 34 N. H. 290; Kountz v. Hart, 17 Ind. 329; Russell v. Minor, 22 Wend. (N. Y.) 659; Lester v. McDowell, 18 Pa. 91; Harris v. Smith, 3 S. & R. 20; Mitchell v. Zimmerman, 109 Pa. 183; Hand v. Matthews, 208 Pa. 149.

*C. H. Ruhl,* for appellee, cited: Bowen v. Burk, 13 Pa. 146; Harris v. Smith, 3 S. & R. 20; Mitchell v. Zimmerman, 109 Pa. 183.

OPINION BY MORRISON, J., January 13, 1906:

This is an action of assumpsit in which the court gave a binding instruction in favor of the plaintiff, and after judgment upon the verdict, the defendant appealed.

On March 11, 1902, the plaintiff had a public sale of his farm stock. The conditions of the sale were as follows: "1. The highest and best bidder shall be deemed the purchaser. 2. All purchases taken collectively which do not amount to $10.00 to be paid cash. 3. All purchases taken collectively which amount to $10.00 and upwards the purchaser shall be entitled to twelve months' credit, provided he gives his note of hand with approved security, payable at the National Union Bank of Reading, Pa. 4. No goods to be removed until satisfaction be first made. 5. Any person or persons purchasing goods at this sale must comply with the foregoing conditions or give up the goods before the sale is over, and pay any deficiency resulting from a resale of said goods."

On the day of the sale a horse was put up at auction and knocked down to the defendant for the price or sum of $140. After the horse was knocked down to him defendant asked plaintiff whether he would be willing to accept his father as surety on the note. Plaintiff replied that he thought so, and defendant said " you go and look into it and as quick as you are satisfied or as quick as you say so, let me know and I will come and take the horse away." The following evening, March 12, plaintiff wrote defendant " to fetch the mare any time and put your father on the note." This letter was postmarked March 13, and was received by Reber about noon of that day. On the night of the 12th the horse was hurt in the stable from the effect of which it died. This was in the plaintiff's stable and the defendant had never had delivery or possession of the horse. It is very clear from the evidence that the plaintiff retained the possession and control of the horse after the sale as fully as before the auction. Upon this state of facts the learned court gave a binding instruction in favor of the plaintiff for the full purchase price and interest, amounting to $155.40.

The assignments of error are as follows: " 1. The court erred in giving binding instructions to the jury in favor of the plaintiff. 2. The court erred in charging the jury as follows:

' For the present we think we had better give binding instructions in favor of the plaintiff and have the case argued fully hereafter. We, therefore, instruct the jury to return a verdict in favor of the plaintiff for $140, with interest, $15.40, making a total of $155.40.' 3. The court erred in directing the jury to find in favor of the plaintiff for the reason that, under the facts in the case, the interpretation of the intention of the parties was for the jury. 4. The court erred in not submitting to the jury the question of the negligent keeping of the horse by the plaintiff after the sale."

The questions for decision are : 1. Did the auction sale vest such a title in the defendant that he was liable for the purchase price, although the horse was never delivered to him and it died in the possession of the plaintiff, before the defendant had an opportunity to deliver the note and receive the horse? 2. If there was a liability was the court justified in giving a binding instruction, or should the questions raised by the evidence have been submitted to the jury ?

Upon the second question it is very clear that the court was not warranted in directing a verdict for the plaintiff. There was no actual delivery of the property to the defendant and if there was such a constructive delivery as would entitle the plaintiff to recover the purchase price, it necessarily arose out of the evidence of what took place at the sale, and the effect of this evidence was, under proper instructions, for the consideration of the jury. The learned court reached a conclusion that the auction sale vested the title in the defendant, as a matter of law, but we do not think this conclusion can be sustained. The court seemed to rely on 21 Am. & Eng. Ency. of Law (1st ed.), p. 483, namely: " The better doctrine, however, appears to be that the transfer of title takes place immediately upon the conclusion of the contract, notwithstanding the fact that the transaction is for cash, the seller having a lien for the price which entitled him to retain the possession of the chattel until the price is paid." This much of the authority is quoted in the opinion of the court, but we find the next sentence following where the court stopped, this : " And in those jurisdictions in which, when the sale is for cash, payment is held a condition precedent, it has been uniformly held that the seller waives the condition when he makes a complete

delivery without expressly reserving title to himself." The logical result of the above doctrine is that where the seller does not make delivery, he holds the title as security and he does not need to reserve title to himself when the sale has not been consummated by a delivery.

The learned court also cites Bowen v. Burk, 13 Pa. 146, to sustain the position that the title to the horse passed to the defendant. A careful reading of that case and eliminating from it so much of the opinion of ROGERS, J., as rests on "Ross on Vendors," which was not necessary to rule the question before the court, leaves the case holding decidedly to the contrary from the construction put upon it by the court below. What the case really decides is that: "The evidence put it beyond all reasonable doubt that the property was purchased at the auctioneer's sale, for the use of the plaintiff ; and further, that the goods were delivered, or at any rate, suffered to go into her possession with the assent and approbation of the assignees, the legal owners. The title, therefore, is perfect, notwithstanding the purchase money remained unpaid ; the only remedy of the assignees being against her on her contract." This doctrine we think is in harmony with all of the Pennsylvania cases when rightly understood.

The learned court also cites Winslow, Lanier & Co. v. Leonard, 24 Pa. 14, but that case expressly holds, " but the vendor has a lien until the conditions of sale are performed, or until full delivery. The principle that, so long as anything remains to be done to ascertain the price, quantity or quality of the thing sold, the title does not pass."

The court refers to Woods v. Nixon, 1 Addison, 131, where it was said that, " if a horse be sold and die in the stables of the vendor between the sale and delivery, the vendor may have debt for the price, the horse being the horse of the buyer from the sale." That is a very old common pleas decision and we are not bound by it. We assume, however, that the right to recover in that case would depend on the sale and a constructive delivery. It is easy to see how a horse might have been sold and a sufficient delivery to have passed the title, and yet remain in the stable of the vendor.

Lester v. McDowell, 18 Pa. 91, is cited, but that case holds that in case of an executory contract for the sale of personal

property, the vendee cannot recover the possession of it unless it was delivered by the vendor. "To constitute a delivery, there must not only be an actual delivery at the place, but an intent so to deliver, which was to be manifested by the acts and declarations of the owner, and which were facts for the consideration of the jury."

In Woolsey v. Axton & Son, 192 Pa. 526, there was an agreement to sell and deliver a raft of timber and Mr. Justice DEAN, speaking for the Supreme Court (p. 530), said : "Admit that, on inspection Woolsey objected to the quality of some of the sticks and Minor replaced them, then Woolsey signified his acceptance of the raft. That only proves that Minor had complied fully with his part of the contract, and the delivery of the raft would be complete on Woolsey performing his part, the payment of the cash and the delivery of the note ; but until this was done, or Minor waived performance, both title and possession remained in him."

Now in the case in hand, why did not both title and possession remain in the plaintiff until the defendant produced the note and the horse was delivered?

In Harris v. Smith, 3 S. & R. 20, GIBSON, J., said: "As to the delivery to the defendant, it is very clear that the property was not changed by it. If a vendor rely on the promise of a vendee to perform the conditions of the sale and deliver the goods absolutely, the right of property will be changed, although the conditions be never performed."

In Mitchell v. Zimmerman, 109 Pa. 183, it was said by Mr. Justice CLARK (p. 186) : "It is certainly true, as we have said, that under the terms of the auction sale as verbally announced by the auctioneer, title would not pass to a purchaser until the price was paid or properly secured ; the giving of a note with security or actual payment of the price, was made a condition precedent of the sale."

In Hand, Appellant, v. Matthews, 208 Pa. 149, it was held as stated in the syllabus : "On a sale of goods, where there is no agreement as to credit and there has been no actual delivery, the title will not pass to the purchaser, until the purchase money has been paid. This rule applies to auction sales."

In Welsh v. Bell, 32 Pa. 12, it was held (p. 18) : "The contract having been to sell for cash, payment of the whole price

was a necessary requisite to a change of the ownership, so long as the possession remained in the vendor." This was said of a sale of personal property for cash, and we cannot see how it differs, in principle, from a sale for an indorsed note to be procured and delivered, the vendor retaining possession of the horse in the meantime.

In Benjamin on Sales (American Edition), sec. 366, it is said that: "Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer." See also Segrist v. Crabtree, 131 U. S. 287 (9 Sup. Ct. Repr. 687).

We doubt, under the facts in the present case, whether the plaintiff presented a case entitling him to go to the jury. But we are only asked to reverse the case because the court withdrew it from the jury. The third assignment of error is a clear concession that the facts in the case were for the interpretation of the jury as to the intention of the parties.

The first, second and third assignments of error are sustained. We do not think there was sufficient evidence to require the court to submit the question raised by the fourth assignment to the jury.

The judgment is reversed with a v. f. d. n.